GODERICH, Judge.
The plaintiff, Michel Aouate, Trustee, appeals from an adverse final judgment. We affirm.
On January 11, 1999, Michel Aouate, as trustee for Fairfax Associates [Purchaser], entered into a Purchase and Sale Agreement [Agreement] with Hotel Europe, Inc. [Seller] to acquire the Fairfax Hotel on Miami Beach for $3,500,000.
Section V of the Agreement provided, in pertinent part:
Purchaser, at the expense of Seller (not to exceed $350.00) shall within five (5) days after the Effective Date order a Proforma Commitment for issuance of a Leasehold Policy of Title Insurance (the “Commitment”) with respect to the Property. Purchaser shall within twenty (20) days after receipt of the Commitment (the “Title Review Period”) review the Commitment and if the Commitment reveals that title to the Property is not good, marketable and insurable in accordance with the standards adopted by The Florida Bar then Purchaser shall, within the Title Review Period, notify Seller, in writing, specifying the title defect(s). If said defect(s) render title to the Property unmarketable, Seller shall have sixty (60) days from receipt of such notice within which to remove said title defects, and if Seller is unsuccessful in removing same within said sixty (60) day period, the Purchaser shall have the option to either: (i) accept the title to the Property as it then is without reduction in the Purchase Price or claim against Seller therefor; or (ii) demand a refund of the Deposit, with all interest accrued thereon, which shall forthwith be returned to Purchaser and thereafter Purchaser and Seller shall be released from all further obligations under this Agreement. If, however, title to the Property is unmarketable because of liens, claims and/or encumbrances (other than the First Mortgage) in a liquidated amount that can be released or satisfied by the payment of money alone then, at the time of Closing, such liens shall be paid from the cash to close and the amount due Seller shall be reduced by such amount. Seller agrees that Seller will, if title to the Property is found to be unmarketable, use its best efforts to cure the defects in title within the time limit provided herein, excluding the commencement and diligent prosecution of any suits.
In January 1999, Robin I. Willner, the Purchaser’s attorney and a title insurance agent for Fidelity National Insurance Company of New York [Fidelity], requested a pro forma commitment from Fidelity. The pro forma commitment revealed several title defects, including several liens for City of Miami Beach Code violations exceeding $375,000 and a claim for equitable lien underlying a lis pendens recorded in Phary Ham v. Hotel Europe, Case No. 98-27892. Willner timely notified the Seller of the title defects and of its duty to remove the defects prior to closing pursuant to the Agreement. The Seller assured Fidelity that the City of Miami Beach liens would be satisfied prior to closing and that the Ham lawsuit “would be taken care of.” On March 10, 1999, Willner learned that the plaintiffs attorney in the Ham lawsuit had sent an offer of settlement proposing to withdraw the claim of equitable lien and discharge the lis pendens for $176,000, but that the Seller had not responded.
On March 16, 1999, the Purchaser appeared at the closing ready, willing, and able to close. Despite the Seller’s assurances, the liens remained on the property on the date of closing. Pursuant to Sec *598 tion V of the Agreement, Willner prepared a closing statement indicating that the sale proceeds would be used to satisfy the City of Miami Beach liens and that $176,000 of the proceeds would .also be placed in escrow pending the dismissal of the Ham lawsuit and discharge of the lis pendens. Upon notice of the situation, Fidelity faxed Willner Endorsement No. 1 which provided in pertinent part, as follows:
With regard to ... the commitment, the Company insures the insured against loss or damage sustained by the insured by reason of a judgment or decree which constitutes a final determination and orders a full or partial satisfaction of said judgment against the land described in Schedule A as a lien encumbering or having priority over the estate insured by this policy.
The Purchaser offered the Seller an additional three days, until March 19, 1999, to remove the title defects. The Seller accepted this extension with regard to the City of Miami Beach liens but refused it with regard to the Ham equitable lien. The Seller then left the closing.
On March 22, 1999, the Purchaser filed a complaint against the Seller seeking specific performance and other relief. The Purchaser alleged that the Seller had breached the Agreement by refusing to transfer title to the property and leaving the closing. The Seller filed an answer and affirmative defenses admitting the existence of the Agreement and stating that it was ready, willing and able to close the transaction.
In December 1999, the matter proceeded to a bench trial. The trial court bifurcated the trial on liability and damages. The trial court narrowed the issues to be tried in the liability phase to: 1) whether the lis pendens filed in the Ham lawsuit created an equitable lien, and if so, whether that lien was a “liquidated amount” as provided in the Agreement such that it would have to be satisfied from the cash to close; and 2) whether the Seller had presented marketable title on the date of the closing.
The parties presented brief opening statements. The Purchaser testified on his own behalf and then called Willner. After Willner’s cross-examination, the trial court decided that it had heard sufficient evidence and was ready to hear counsel’s arguments on the two narrow legal issues. During the Purchaser’s argument, his counsel requested an opportunity to redirect Willner regarding the issue of marketability of title and to present the testimony of the plaintiffs attorney in the Ham lawsuit regarding the “liquidated amount” issue. The trial court denied these requests stating that these were legal issues and that no further evidence was required.
Thereafter, the trial court reiterated that there were no real factual disputes with regard to these two narrow legal issues, and the court ruled that the $176,000 amount that would have satisfied the Ham equitable lien was a settlement proposal, not a lien in a liquidated amount. Therefore, the Seller had the right to decline to allow the sale proceeds to be used to pay the underlying and unrelated lawsuit. Second, the trial court ruled that because Endorsement No. 1 was sent by Fidelity to Willner on the day of the closing, it meant that title to the property was insurable and therefore good and marketable. The trial court concluded that the Purchaser had not established a prima fa-cie case warranting the equitable relief of specific performance.
Before the trial court entered final judgment, the Purchaser proffered that Will-ner, on redirect, would have testified that Fidelity never intended to insure against the Ham lawsuit and that Endorsement No. 1 was still subject to revisions and *599 conditions at the time it was sent to Winner. The Purchaser also proffered that the plaintiffs attorney in the Ham lawsuit would have testified that the damages being sought in the Ham lawsuit were a sum certain and thus a liquidated amount.
On January 7, 2000, the trial court entered final judgment in favor of the Seller. The trial court denied the Purchaser’s motion for rehearing. The Purchaser’s appeal follows.
The Purchaser contends that the trial court erred by entering judgment in favor of the Seller before he had the opportunity to complete the presentation of his evidence. Edelson v. Poinciana Village Yacht & Country Club, Inc., 615 So.2d 880 (Fla. 3d DCA 1993) (holding that trial court erred by directing a verdict for the defendant prior to the close of the plaintiffs presentation of evidence); Sheldon Greene & Assocs., Inc. v. Williams Island Assocs., 550 So.2d 1142 (Fla. 3d DCA 1989)(same), review denied, 557 So.2d 35 (Fla.1990); Sapp v. Redding, 178 So.2d 204 (Fla. 1st DCA 1965)(holding that trial court erred by granting involuntary dismissal prior to the close of the plaintiffs presentation of evidence). Although this is an accurate statement of the law, we disagree with the Purchaser’s contention finding that the trial court acted within its discretion in excluding the proffered testimony as parol evidence where the terms at issue were clear and unambiguous. Sosnowitz v. Sosnowitz, 342 So.2d 524, 525 (Fla. 3d DCA)(holding that where the terms of an agreement are clear and unambiguous, the agreement itself is the best evidence of the specific intent of the parties at the time it was executed), cert. denied, 352 So.2d 174 (Fla.1977); see also, Jenkins Trucking, Inc. v. Emmons, 212 So.2d 55, 56 (Fla. 3d DCA), cert. denied, 218 So.2d 173 (Fla.1968).
In the instant case, the trial court, after hearing the background factual testimony, determined that there were only two legal issues that needed to be decided in the liability phase: 1) whether the Ham equitable lien was a “liquidated amount” and 2) whether the title was “marketable” on the date of closing.
The trial court properly determined that the term “liquidated amount” was unambiguous and properly excluded the proffered testimony of the plaintiffs attorney in the Ham lawsuit regarding his characterization of the claim as a liquidated amount. The trial court applied the ordinary meaning of the term “liquidated amount” when it examined the settlement offer that was in evidence and determined that the damages claimed in the Ham lawsuit were not a sum certain. The Ham lawsuit not only contained claims for breach of contract, but also for fraud in the inducement, loss of benefit of the bargain, and other damages. Therefore, the trial court properly concluded as a matter of law that the Ham equitable lien was not a liquidated amount and that the Seller was not obligated to satisfy the claim pursuant to the Agreement.
Next, the trial court determined the issue of marketability of title on the date of closing by examining Fidelity’s Endorsement No. 1 to the title policy which was in evidence. Again, the trial court found that the endorsement was unambiguous and properly excluded Willner’s testimony regarding Fidelity’s intent. The trial court gave the endorsement its plain and ordinary meaning and determined, as a matter of law, that the endorsement would have insured the property against the Ham claim of equitable lien and that, therefore, title to the property was good and marketable.
Accordingly, we find that the trial court acted within its discretion in excluding the *600 proffered testimony as parol evidence and affirm the entry of final judgment in favor of the Seller.
Affirmed.
JORGENSON, J., concurs.